# United States District Court for the Northern District of California

Sai
legal@s.ai
+1 510 394 4724 phone / +1 206 203 2827 fax
500 Westover Dr. #4514, Sanford, NC 27330

*Plaintiff*[1]
on Plaintiff's own behalf, and on behalf of all those
similarly situated

v.

David Smith[2], TSA SFO TSM[3]

Jim Adams, TSA SFO FSD

Champagne Ellison, CAS SFO ATM

Covenant Aviation Security (CAS)
*c/o James E. Mahoney, counsel*
*Griffith & Jacobson, LLC*
55 W. Monroe St.
Suite 3550
Chicago, IL 60603

Does 1-10, TSA SEA personnel

Does 11-20, TSA MIA personnel

Does 21-30, MIA PD personnel

Civil Action No.: 3:16-cv-01024

**JURY TRIAL DEMANDED**

---

[1] Note: "Sai" is Plaintiff's full legal name.

[2] Plaintiff does not know the addresses or attorneys for service of process of the individual-capacity defendants. All of the individual defendants are agency employees (who, moreover, have discoverable evidence), and therefore DHS/TSA must both know their physical addresses and have an obligation to disclose that information. If individual defendants refuse consent for individual capacity service through counsel, this information will be obtained by discovery after case initiation.

As a matter of simple civility and individual privacy, it would be preferable to avoid having to discover, publicly disclose, and serve individual Defendants' personal addresses. Hopefully Defendants agree, and will cooperate with alternative service. Plaintiff has previously agreed with TSA/DHS to serve many of the individual capacity defendants through counsel in another case, *Sai v. DHS et al.,* No. 1:14-cv-1876 (D. D.C. 2016).

Furthermore, it is likely that individual defendants would move for a protective order regarding their addresses, which would be unopposed and likely be granted. *See Armato v Doe et al.,* No. CV-11-02462 (D. AZ. Nov. 26, 2012). However, Plaintiff would oppose a motion for a protective order regarding individual defendants' *names*.

[3] All individual defendants are named in *both* individual and official capacity.

Does 31-40, TSA RDU personnel

Does 41-50, TSA DFW personnel

Does 51-60, TSA LGA personnel

Does 61-70, TSA BOS personnel

Kimberly Walton, TSA HQ AA/OCRL

William McKenney, TSA HQ

Seena Foster, TSA HQ

Zachary Bromer, TSA HQ

Jeremy Buzzell, TSA HQ

Erika Lucas, TSA HQ

Does 71-80, TSA OCC personnel

Transportation Security Administration (TSA[4])
601 S. 12th St., Arlington, VA 22202

Department of Homeland Security (DHS)
Mail Stop 3650, Washington, DC 20528

United States (USA)
Department of Justice / Attorney General, *counsel*
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

*Defendants*

---

[4] TSA is a subcomponent of DHS. CAS is a contractor engaged by SFO and working directly at TSA's direction and in accordance with TSA policy. "TSA", throughout this complaint, should be read to include both CAS and DHS, except in naming a title or office; "TSA" is used for all three for the sake of simplicity.

# First Amended Complaint[5]

1. The complaint is amended as of right, per F.R.Civ.P. 15(a)(1).

2. Due to the lack of appointed counsel, Plaintiff's disabilities, and the number of complex factual and legal issues at issue, this complaint is incomplete as to both its legal pleadings and factual claims. Plaintiff therefore asks that counsel be appointed and permitted to further amend the complaint and attach more well elaborated evidence.

3. Together with the attached exhibits and the video incorporated by reference, this amended complaint should be sufficient to demonstrate the basic matters at issue and factual foundation enough to support a determination of the potential merit of Plaintiff's claims.

## Summary

4. Defendants violated Plaintiff's civil rights by, *inter alia*, refusing to screen Plaintiff's medical liquids at TSA checkpoints; refusing to allow Plaintiff to travel with liquids *after* screening and clearing them; unlawfully seizing liquids; unlawfully detaining Plaintiff; assaulting Plaintiff in the course of screening; refusing to provide accommodations for Plaintiff's disabilities, harming Plaintiff's health; and otherwise unlawfully obstructing Plaintiff's right

---

[5] Notice of related cases:

1. *Sai v. TSA*, No. 1:14-cv-403-RDM (D.D.C.) (ongoing) challenges TSA's violations of the Freedom of Information Act and Privacy Act.
2. *Sai v. DHS et al.*, No. 1:14-cv-1876-RDM (D.D.C.) (Plaintiff declared prevailing party) challenged TSA's refusal to respond to Plaintiff's Rehabilitation Act grievances. *See* ECF No. 88 & 89, 149 F. Supp. 3d 99 (Dec. 15, 2015); ECF No. 93 (April 15, 2016).
3. *Sai v. Neffenger*, No. 15-2356 (1st Cir.) (in abeyance) challenges TSA's "orders" under 49 U.S. Code §§ 46110(a) and 46105(b).
4. *Sai v. TSA et al.*, No. 1:15-cv-13308 (D. MA.) (in abeyance pending collateral appeal re appointment of counsel) challenges TSA's violations of Plaintiff's civil rights at BOS.

to travel.

5. TSA acted similarly against Plaintiff at multiple airports throughout the country.

6. TSA HQ defendants violated Plaintiff's rights by, *inter alia*, committing obstruction of justice and violating the APA by first conspiring to "not process", and then to unlawfully delay, Plaintiff's formal grievances under the Rehabilitation Act.

7. Plaintiff seeks declaratory relief, injunctions, permanent injunctions, statutory, compensatory, punitive, and other damages; costs; attorney's fees; etc, in accordance with the Rehabilitation Act, *Bivens*, FTCA, Administrative Procedure Act, US Constitution, common law torts, etc.

8. Plaintiff seeks to institute a class action as to TSA's "medical liquids" policy and TSA's pattern and practice of obstructing individuals' rights under the Rehabilitation Act and APA.


**Facts**

*Video*

9. Plaintiff submits the following video evidence as part of the Complaint:

|  | Video title<br>YouTube link | Duration |
|---|---|---|
| | **2013-03-01 SFO incident** | |
| a. | Sai's SFO TSA incident - airport camera footage 1<br>https://www.youtube.com/watch?v=Ix_Ilm7O2vg | 6:35 |
| b. | Sai's SFO TSA incident - airport camera footage 2<br>https://www.youtube.com/watch?v=ObZ1eMeZyh0 | 52:27 |
| c. | Sai's SFO TSA incident - Raw footage, iphone part 2<br>https://www.youtube.com/watch?v=t1Da0_P64Ow | 0:28 |
| d. | Sai's SFO TSA incident - Raw footage, iphone part 1<br>https://www.youtube.com/watch?v=Pwu56q662fU | 46:26 |
| e. | Sai's SFO TSA incident - Raw footage, Xacti part 1 - 2013-03-01 21:46<br>https://www.youtube.com/watch?v=NH-1EwiGF0g | 30:00 |

    f.  Sai's SFO TSA incident - Raw footage, Xacti part 2 - 2013-03-01 22:34       7:15
       https://www.youtube.com/watch?v=A5mKmZtzYh4

**2015-12-31 SEA incident**

    g.  2015-12-31 16-30 SEA TSA - AIT mandatory - raw 1       24:41
       https://www.youtube.com/watch?v=1H1m9vyDK8w

    h.  2015-12-31 16:42:04 SEA TSA - AIT mandatory - raw 2       13:08
       https://www.youtube.com/watch?v=hGSTNlqSYRc

    i.  2015-12-31 16:58:28 SEA TSA - AIT mandatory - raw 3       19:37
       https://www.youtube.com/watch?v=tC9O1Fbvme4

**2013-05-11 MIA incident**

    j.  MIA 2013 05 11 04 49 00       6:52
       https://www.youtube.com/watch?v=ixZG5nCp-jA

    k.  MIA 2013 05 11 05 29 34       11:13
       https://www.youtube.com/watch?v=f6VukTTA1fo

    l.  MIA 2013 05 11 05 56 03       26:14
       https://www.youtube.com/watch?v=CcqC4KC2Ob8

    m.  MIA 2013 05 11 05 56 25       0:16
       https://www.youtube.com/watch?v=Om1aubvPlUs

    n.  MIA 2013 05 11 06 18 18       2:13
       https://www.youtube.com/watch?v=iWhdOfBoN-A

**2013-03-10 RDU incident**

    o.  RDU 2013 03 10 02 33 30       0:28
       https://www.youtube.com/watch?v=xXtBnwOHUzs

    p.  RDU 2013 03 10 02 46 42       15:19
       https://www.youtube.com/watch?v=fPHczpliVec

    q.  RDU 2013 03 10 10 56 37       0:33
       https://www.youtube.com/watch?v=OgH6EDx_4rw

**2013-05-20 DFW incident**

    r.  DFW 2013 05 20 07 45 26       18:37
       https://www.youtube.com/watch?v=9lPWTWf3RuI

    s.  DFW 2013 05 20 07 45 26 2       30:00
       https://www.youtube.com/watch?v=xims-0H9KZo

*Liquids incidents*

10. In at least seven separate incidents spanning multiple years and states, TSA personnel, and

    police acting at their direction, variously:

    a.  refused to screen Plaintiff's medical liquids

    b.  screened Plaintiff's medical liquids improperly

    c.  confiscated Plaintiff's medical liquids

    d.  refused to allow Plaintiff access to immediately necessary medical liquids during screening

    e.  refused to allow Plaintiff to travel with liquids that had been screened and cleared through testing such as explosive trace detection, i.e. despite their own conclusively determination that the liquids were not a weapon, explosive, or incendiary device

    f.  interrogated Plaintiff about private information of no relevance or necessity to their authority under TSA's enabling statute

    g.  called police to take action against Plaintiff for Plaintiff's calm assertion of Plaintiff's civil rights

    h.  refused to obey TSA policy about medical liquids

    i.  refused to enforce TSA's policy about medical liquids

    j.  assaulted Plaintiff during screening

    k.  unlawfully detained Plaintiff during screening

11. These incidents include:

    a.  2012-06-27 LGA (New York)

    b.  2013-03-01 SFO (California)

    c.  2013-03-10 RDU (North Carolina)

    d.  2013-05-20 DFW (Texas)

    e.   2015-12-31 SEA (Washington)

    f.   2013-05-11 MIA (Florida)

    g.   2016-12-16 BOS (Massachusetts)

**2016-12-16 BOS incident**

12. On Dec. 16, 2016, Plaintiff was subjected to another TSA screening at BOS that violated Plaintiff's rights to travel with medical liquids.

13. BOS TSA personnel confiscated Plaintiff's hydrogen peroxide based contact lens solution.

14. Plaintiff promptly filed an FTCA claim, attached, explaining the relation to this case, Plaintiff's intent to include it in the FAC as a new class, and noting that TSA had denied Plaintiff's other FTCA claims in this case for the fact of being in this case.

15. TSA acknowledged the claim Dec. 22, 2016.

16. As of January 13, 2017, TSA stated that "the claim will be resolved as soon as practicable".

17. TSA's own records indicate that its policy on hydrogen peroxide contact lens solution vary from airport to airport, which is facial evidence of an arbitrary and capricious nationwide policy and practice.

18. TSA's prior actions in refusing to process Plaintiff's FTCA claims for years, and subsequently denying them on the sole basis of being included in this case, demonstrate that pursuit of administrative remedy would be futile. Accordingly, the claim is constructively exhausted.

*Grievance handling*

19. As held by the court in *Sai v. DHS et al.*, No. 1:14-cv-1876, 149 F. Supp. 3d 99 (D.D.C. Dec.

15, 2015), TSA "manifestly failed to comply with its obligation" to respond to Plaintiff's SFO grievance, constituting "agency action unlawfully withheld or unreasonably delayed". p. 13. "Defendants' 2.75-year delay in responding to [Plaintiff's] SFO complaint is "unreasonable"", and "[i]t is difficult to envision the "rule of reason" that would permit an agency routinely to delay the processing of administrative complaints by a factor of five times the timetable set out in the agency's governing regulations". *Id.*, p. 30.

20. TSA was legally mandated, and promised in writing, to respond to Plaintiff's BOS grievance by July 25, 2013.

21. TSA deliberately and unlawfully refused to respond to Plaintiff's grievance.

22. Based on intra-agency emails obtained by FOIA, TSA HQ personnel feloniously conspired first to deliberately obstruct, and then to delay, the federal investigation of Plaintiff's grievance.

23. Based on documents obtained by FOIA, BOS TSA personnel feloniously obstructed the federal investigation of Plaintiff's grievance by knowingly and willfully making false or completely imagined statements in their reports of the BOS incident, directly in contradiction with video evidence.

24. TSA only responded to Plaintiff's grievance after nearly a year and a half of litigation, on March 4, 2015.

25. TSA has adopted the BOS BDOs' false statements as the agency's own position, despite irrefutable evidence that the statements were false.

26. TSA's official position in its response to Plaintiff's grievance is that Plaintiff was deprived of writing materials in deliberate retaliation for Plaintiff's having used them to object to the

illegality of the BOS BDOs' search, and in order to impose a prior restraint on Plaintiff's speech.

27. TSA was legally mandated, and promised in writing, to respond to Plaintiff's administrative appeal of that response, filed May 3, 2015, by June 3, 2015.

28. TSA deliberately and unlawfully refused to respond to Plaintiff's administrative appeal.

29. TSA only responded to Plaintiff's administrative appeal, on August 25, 2015, after a motion in the same litigation.

*General*

30. Plaintiff demands jury trial.

31. Plaintiff has been damaged and prejudiced by defendants' actions and inactions.

32. Although Plaintiff's disability and the resulting magnification in physical harm caused by mental or emotional distress is unusual, under the "eggshell" doctrine, "[i]t is a settled principle of tort law that when a defendant's wrongful act causes injury, he is fully liable for the resulting damage even though the injured plaintiff had a preexisting condition that made the consequences of the wrongful act more severe than they would have been for a normal victim." *Maurer v. US*, 668 F. 2d 98, 99-100 (2nd Cir. 1981)

33. Defendants were made aware of Plaintiff's condition and unusual vulnerability to stress, which was specifically documented by a formal letter[6] attached as an exhibit to Plaintiff's grievances.

34. Defendants are not entitled to *Chevron* deference, as TSA's liquids policies are *ultra vires*.

---

[6] This letter was signed by Plaintiff's neurologist at the time — a motor disorders specialist at the University of Chicago — and written well before the BOS and SFO incidents.

TSA is not authorized by statute to refuse to screen liquids presented for screening; to refuse to permit people to travel with screened, non-harmful liquids; to demand medical and disability related information from travelers; or to make determinations of disabled travelers' medical liquids needs.

35. Defendants are not entitled to *Auer* deference, as TSA has explicitly admitted that "literal interpretation" of TSA's binding statement of its liquids rule is "unreasonable".[7]

**Procedural issues**

36. Plaintiff has asked for assistance of counsel to draft this complaint, which this Court denied.

37. This complaint is written *pro se*, without the assistance of counsel. Although Plaintiff has attempted to read and follow this Court's rules, the Federal Rules of Civil Procedure, applicable statutes / regulations, etc., Plaintiff is not an attorney, and asks for the liberal construction and relaxed procedural requirements normally given to pro se plaintiffs.

38. To the extent that this Court believes that a matter filed by Plaintiff should be construed or interpreted differently than its facial content, Plaintiff respectfully requests that this Court ask Plaintiff for clarification or confirmation, so that it is in keeping with Plaintiff's intent and in Plaintiff's favor, and so that Plaintiff has the opportunity to correct any good faith omissions or errors.

39. Plaintiff requests that, wherever possible, all communications regarding this matter be emailed to legal@s.ai or served via CM/ECF, and that nothing be sent by physical mail unless explicitly agreed to otherwise.

---

[7] This is a direct quote from the Rehabilitation Act grievance response about the SFO incident that Plaintiff obtained from TSA by court order. *Sai v. DHS et al.,* No. 14-cv-1876 (D. D.C. Dec. 15, 2015).

40. Plaintiff stipulates that all acknowledged email will constitute completed service of process, and will endeavor to acknowledge all email within two days of receipt (and more typically, within a few hours). Plaintiff can be reached by phone if anything is missed.

**Parties**

*Plaintiff*

41. Sai is a U.S. citizen who has and and is regarded as having a disability, as defined in 42 U.S. Code § 12102(1) and 29 U.S. Code § 705(20)(B).

*Agency defendants*

42. DHS and its component agency TSA are "executive agencies", and TSA's airport checkpoint screenings are a "program or activity receiving Federal financial assistance", within the meaning of 29 U.S. Code § 794(a).

43. CAS is a contractor agent of the TSA that, at SFO, engages in the primary screening duties ordinarily done by direct TSA employees.

44. TSA, DHS, and CAS are referred to in this complaint, jointly and severally, as "TSA". *See* fn. 4, *supra*.

*SFO defendants*

45. David Smith was the TSA transportation security manager (TSM) at SFO at the time of the SFO incident, and the highest ranking person directly involved in the TSA incident with whom Plaintiff personally interacted.

46. Jim Adams was the acting TSA federal security director (FSD) at SFO, and the highest

ranking person directly involved in the SFO incident.

47. Champagne Ellison was the CAS assistant terminal manager (ATM) at SFO, and the highest

ranking non-TSA employee directly involved in the SFO incident.

*Other TSA defendants and MIA PD defendants*

48. Plaintiff does not know the names of all the TSA personnel, and the MIA PD personnel, who

took action against Plaintiff, and has therefore named them as Does.

49. Plaintiff expects to take initial discovery to identify the Doe defendants.

*TSA HQ defendants*

50. Megan H. Mack has been the DHS Officer for Civil Rights and Civil Liberties (O/CRCL)

since Oct. 23, 2013.

51. Tamara Kessler was the DHS O/CRCL before Oct. 23, 2013.

52. John S. Pistole was the Administrator of the TSA until his replacement by Peter Neffenger on

July 4, 2015.

53. Kimberly Walton is the TSA Assistant Administrator for the Office of Civil Rights and

Liberties (OCRL), and "is responsible for ensuring that … the traveling public are treated in

a fair and lawful manner consistent with federal laws and regulations protecting privacy",

which "include[s] affording redress, governing freedom of information and prohibiting

discrimination and reprisal, while promoting diversity and inclusion."[8]

54. Walton is TSA's designated privacy and civil liberties officer[9] in accordance with 42 U.S.

---

[8] http://www.tsa.gov/about-tsa/kimberly-walton

[9] https://www.tsa.gov/content/civil-rights-andor-civil-liberties-complaint-form

Code § 2000ee–1(a)[10], personally responsible for TSA's investigation, response, and redress of the grievances.

55. Francine Kerner is Chief Counsel in the TSA Office of Chief Counsel (OCC).

56. William McKenney is a senior policy advisor at the TSA OCRL.

57. Seena Foster is a manager at the TSA Disability Branch (DB) / OCRL.

58. Zachary Bromer is a program specialist at the TSA Disability & Multicultural Division (DMD) / DB / OCRL, and the primary OCRL handler of the grievances.

59. Jeremy Buzzell is a branch manager at TSA DMD/DB/OCRL.

60. Erika Lucas is a program specialist at TSA DMD/DB/OCRL, and the primary OCRL handler of the grievances until Bromer took them over on approximately April 17, 2014.

**General jurisdiction and venue**

61. The United States District Court for the Northern District of California has both jurisdiction and venue to review defendants' actions, and all claims below.

62. 28 U.S. Code § 1331 provides that district courts have original jurisdiction of Federal questions.

63. SFO and Agency Defendants either have direct contact with California, or are part of an agency that does.

---

[10] I.e. AA Walton is TSA's "senior officer", responsible to: "(1) assist the head of such department, agency, or element and other officials of such department, agency, or element in appropriately considering privacy and civil liberties concerns when such officials are proposing, developing, or implementing laws, regulations, policies, procedures, or guidelines related to efforts to protect the Nation against terrorism;

(2) periodically investigate and review department, agency, or element actions, policies, procedures, guidelines, and related laws and their implementation to ensure that such department, agency, or element is adequately considering privacy and civil liberties in its actions;

(3) ensure that such department, agency, or element has adequate procedures to receive, investigate, respond to, and redress complaints from individuals who allege such department, agency, or element has violated their privacy or civil liberties; and"

64. This suit arises from actions that occurred in over 7 airports throughout the country, .

65. Defendants' actions violated Federal, California, Washington, Florida, North Carolina, Texas, New York, and Massachusetts laws.

66. 28 U.S. Code § 1332 provides that district courts have jurisdiction on matters of diversity of citizenship.

67. The amount of individual damages at issue is on the order of millions of dollars.

68. The amount of class damages at issue is on the order of billions of dollars.

69. This Court has diversity jurisdiction over those Defendants who do not personally have contact with California.

70. 29 U.S. Code § 794(a) prohibits discrimination on the basis of a disability in Federal programs.

71. 29 U.S. Code § 794a(a)(2) provides that § 794, for non-employment-related actions, may be enforced (non-exclusively) by the remedies of 42 U.S. Code § 2000d *et seq*.

72. TSA has admitted that its screening is a covered program under the Rehabilitation Act.

73. TSA has admitted that Plaintiff is a person with a disability under § 794 qualified to participate in TSA's screening program.

74. 29 U.S. Code § 794a(b)[11] provides that in any action to enforce § 794, the prevailing on-US party may recover attorney's fees as part of costs.

75. 42 U.S. Code § 2000d-1 requires Federal agencies to finance and engage in programs to further § 2000d, and by §794a(a)(2), applies to § 794.

---

[11] "In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

76. 42 U.S. Code § 2000d-2 provides that § 2000d-1 actions are subject to judicial review as may

   otherwise be permitted for similar actions, but does not specify distinct venue.

77. The Administrative Procedure Act, 5 U.S. Code Ch. 7 ("APA"), provides for general judicial

   review of agency actions, with 5 U.S. Code § 703 providing venue in any "court of

   competent jurisdiction".

78. 5 U.S. Code § 706 provides that this Court must compel agency action unlawfully withheld

   or unreasonably delayed, hold unlawful and set aside improper agency actions, etc., and that

   such review shall be *de novo*, based on the whole record.

79. Plaintiff has exhausted all administrative remedy.


**Causes of action**

80. For each of the below causes of action, Plaintiff repeats and realleges all other statements in

   this complaint.



81. It raises multiple tort claims e.g. FTCA and state torts (invasion of privacy, intrusion upon

   seclusion, assault, battery, false imprisonment, NIED, IIED, conversion of chattels, trespass

   to chattels, personal injury), *Bivens* and 42 U.S.C. § 1983 (1st, 4th, 5th, & 14th

   Amendments), etc.

82. It raises issues under the APA, such as TSA's repeated promulgation of *de facto* regulations

   without required notice and comment rulemaking. *See EPIC v. DHS*, 653 F.3d 1 (2011)

   (holding that TSA violated the APA in promulgating its optional-AIT-screening rule and

   ordering a notice and comment rulemaking). In this case, Plaintiff challenges TSA's "medical

liquids" rule. Furthermore, the APA allows private suits for declaratory and injunctive relief under TSA's rule, which it has repeatedly refused to obey, to Plaintiff's detriment.

83.

84. It raises issues on which there are circuit splits unresolved in this District — and split even *within* the 9th Circuit — such as whether TSA screeners are "investigative officers" under the FTCA, 28 U.S.C. § 2680(h).[12] Furthermore, there are tactical difficulties about how or whether Plaintiff should raise FTCA claims, lest they prejudice Plaintiff's *Bivens* claims. *See Gasho v. United States*, 39 F. 3d 1420 (9th Cir. 1994) (holding that an FTCA judgment may bar a subsequent *Bivens* claim).

85. It raises issues of diversity, since it encompasses similar incidents at SFO, LGA, and MIA, as well as the processing of Plaintiff's Rehabilitation Act grievances by TSA HQ personnel.

**Class action classes**

86. In addition to individual claims, Plaintiff pleads on behalf of all persons similarly situated.

---

[12] Courts saying yes:
*Pellegrino v. TSA*, 855 F. Supp. 2d 343, 356 (E.D. Pa. 2012)
*Armato v. Jane Doe 1*, No. 2:11-cv-02462 (D. Ariz. May 15, 2012)          * *9th Cir.*
*George v. Rehiel*, No. 10-586 (E.D. Pa. Oct. 28, 2011)

Courts saying no:
*Vanderklok v. United States et al.*, No. 15-00370 (E.D. Pa. Oct. 6, 2015)
*Koe v. United States et al.*, No. C13-1708-JCC (W.D. Wa. July 29, 2014)      * *9th Cir.*
*Pellegrino v. TSA*, No. 09-cv-5505 (E.D. Pa. April 16, 2014)             * *but see* (2012) *supra*
*Hernandez v. US*, 34 F. Supp. 3d 1168, 1176 (D. Co. 2014)
*Walcott v United States et al.*, No. 13-CV-3303 (E.D. N.Y. Oct. 18, 2013)
*Corbett v. TSA*, 968 F. Supp. 2d 1171, 1183-85 (S.D. Fla. Nov. 16, 2012)
*Weinraub v. United States*, 927 F. Supp. 2d 258, 262-63 (E.D. N.C. 2012)
*Coulter v DHS et al*, No. 07-4894 (D. N.J. Sept. 24, 2008)
*Welch v. Huntleigh USA Corp.*, No. 04-663 (D. Or. Aug. 4, 2005)          * *9th Cir.*

87. Plaintiff seeks certification the following classes:

88. (A) all people who have had property confiscated[13] or otherwise incurred costs[14] due to TSA's liquids policies

89. (B) all disabled people who have suffered medical injury or been denied reasonable accommodations due to the TSA's liquids policies

90. (C) all people who who wear contact lenses, use hydrogen peroxide based solution, and have had it confiscated by TSA

91. (D) all people who have been deterred from bringing any liquid through a TSA checkpoint, or otherwise deterred, due to TSA's liquids policies.

92. Due to the tremendous size of these classes,  class damages are potentially in the billions of dollars.[15]

_____

[13] "Confiscated" includes any alleged "voluntary" relinquishment, destruction, etc.

[14] Other costs include any cost that would not have been incurred but for TSA's liquids policies, such as costs of replacement, airport prices higher than would have been otherwise available, self-mailing, bag checking, etc.

[15] TSA screens roughly 700 million passengers per year. *See TSA 2015 Year in Review*, The TSA Blog, at http://blog.tsa.gov/2016/01/tsa-2015-year-in-review.html (accessed April 3, 2016). The liquids policy was instituted in mid 2006.

Supposing conservatively that only 10% of passengers suffered an economic loss (such as a discarded water or perfume bottle), and a loss of about $2 per affected passenger, class A's damages would still amount to roughly $1.4 billion over the last 10 years.

Class B would be smaller, as not all travelers are disabled, and not all disabled people have medical liquids related needs. However, considering the significantly larger individual damages, and still very large class size, Class B damages would also likely be in the billions of dollars. *See* e.g. *Nearly 1 in 5 People Have a Disability in the U.S., Census Bureau Reports*, at https://www.census.gov/newsroom/releases/archives/miscellaneous/cb12-134.html (accessed April 3, 2016).

Plaintiff's *individual* FTCA claims, which have been administratively exhausted, were filed for $200,000 (re. SFO incident) and $25,000 (re. TSA's obstruction of grievance handling). This

93. Plaintiff, who is not a lawyer, is unlikely to be qualified under F.R.Civ.P. 23(a)(4), and accordingly needs counsel to assert this right.

**Claims of relief**

94. All the following claims are pled as *both* individual and class claims.

*1. Refusal to respond to Rehabilitation Act complaints within 180-day deadline*

95. 6 C.F.R. Part 15 constitutes DHS' regulations implementing 29 U.S. Code § 794, with 6 C.F.R. 15.30 mirroring the non-discrimination provision of §794(a).

96. 6 C.F.R. 15.70 provides DHS' procedures for § 794 complaints. In particular, 15.70(g) requires that, "not later than 180 days from the receipt" of a complaint, the DHS *shall* provide the complainant with the results of its investigation, that DHS employees are *required* to cooperate in the investigation and attempted resolution of complaints, and that the DHS CRCL Officer is responsible for all of the above.

97. 5 U.S. Code § 706 *requires* that defendants be compelled to issue the responses unlawfully withheld and unreasonably delayed, (1), *"and"* that this Court "hold unlawful and set aside agency action" that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; … in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] without observance of procedure required by law", (2)(A, C & D).

*2. Individual liability for violation of civil rights*

98. 42 U.S. Code § 1983, as interpreted by *Bivens v. Six Unknown Named Agents*, 403 U.S. 388

---

does not include damages under *Bivens* or other claims of relief.

(1971), provides that there is a private right of action against the United States, and Federal agents in their official capacities, for violation of civil rights caused by an agent acting within their official capacity, and that this court has jurisdiction and venue for such actions.

99. TSA at MIA directly colluded with MIA PD, who acted at TSA's direction, to violate Plaintiff's rights, making both liable under both 42 USC 1983 and *Bivens*.

100.   TSA supervisors and HQ personnel deliberately refused to properly train their personnel, supported subordinates' unlawful actions, refused to enforce TSA policy or law, thereby giving rise to  supervisory liability.

101.   Government agents are liable in their *individual* capacity, and their qualified immunity is void, if their actions "violate clearly established … rights of which a reasonable person would have known". *Harlow v. Fitzgerald, 457 U.S. 800 (1982)*

102.   The Rehabilitation Act, and DHS' implementing regulations — such as the right to file a complaint under 29 U.S. Code § 794 and receive a full response within 180 days — are clearly established civil rights.

103.   These rights were *personally* known by the individual defendants, who are officially charged with carrying out § 794 and its implementing regulations, and aware of Plaintiff's clear and repeated reminders over the course of nearly two years of TSA's ongoing violations of the response deadlines.

104.   TSA explicitly stipulated that it would address Plaintiff's grievances under § 794 and 6 C.F.R. Part 15, respond within 180 days, and treat the grievances as two distinct § 794 complaints.

105.   6 U.S. Code § 345(a) provides that the DHS CRCL Officer is personally responsible for

review, compliance, and investigation of the grievances.

106.   Each of the defendants is *personally* liable to Plaintiff for compensatory and punitive damages.

107.   42 U.S. Code § 1988 provides that § 1983 and §2000d *et seq* actions (which includes, by reference, 29 U.S. Code § 794) may recover attorney's fees and expert fees.

108.   28 U.S. Code § 2412 provides that civil actions against an agency "shall award to a prevailing party other than the United States fees and other expenses", including costs, attorney's fees, etc.

*3. Negligent, willful, and intentional infliction of mental and emotional distress, and physical pain and suffering*

109.   Defendants were aware that their actions did cause, and would reasonably be expected to cause, mental and emotional distress and physical injury to Plaintiff.

110.   Defendants were aware that due to Plaintiff's disability, such distress would likely result in physical injury, pain and suffering as well.

111.   Each of the defendants is *personally* liable to Plaintiff for compensatory and punitive damages.

*4. Deliberate obstruction and conspiracy by unknown TSA counsel*

112.   In an email written by Buzzell to Lucas and Bromer, Buzzell indicated that "it [was] OCC that told us to NOT process this" (referring to the grievances).

113.   TSA has refused to provide documentary evidence, uniquely available to them and specifically denied to Plaintiff, that could demonstrate that Buzzell, Bromer, or Lucas were

*not* directed to delay or "not process" the grievances and/or that they did not agree to do so.

114. TSA's refusal to provide evidence when challenged to do so has created an affirmative presumption that the evidence is unfavorable — i.e. that unknown OCC counsel did in fact tell Buzzell, Bromer, & Lucas not to investigate the grievances, and that they agreed.

115. Such obstruction of justice constitutes gross professional malpractice, § 1983 / *Bivens* violation, civil and criminal conspiracy, Rehabilitation Act violation, multiplication of proceedings, felony violation of 18 U.S. Code §§ 4, 371, 1001, 1505, 1512, & 1519, etc.

116. Any instruction, advice, agreement, etc. to "not process" or delay the grievances is a *per se* unlawful action, not subject to any privilege, fully discoverable, and personally sanctionable.

117. TSA OCC and DHS OGC chief counsels are also personally responsible for all official capacity actions made by all counsel in their offices.

*5. Civil conspiracy by all TSA agents involved in processing the Rehabilitation Act complaint responses*

118. It is a civil tort to refuse to timely respond to a Rehabilitation Act complaint or administrative appeal, violate § 1983, cause emotional distress (with *mens rea* of negligence or higher), etc., and as described above, Plaintiff has been harmed by defendants' unlawful (in)actions.

119. By the civil conspiracy doctrine, any TSA agents handling the grievances who were aware of the deadlines to respond, and chose not to obey the law or cooperated with others in doing so, are equally liable in all of the causes of action above.

*6. Multi-state torts*

120.    The actions at TSA checkpoints constituted:

121.    a) invasion of privacy

122.    b) intrusion upon seclusion

123.    c) false light

124.    d) assault

125.    e) battery

126.    f) false imprisonment

127.    g) negligent infliction of emotional distress

128.    h) intentional infliction of emotional distress

129.    i) conversion of chattels

130.    j) trespass to chattels

131.    k) personal injury

132.    Due to the wide diversity of locations at issue, the tort laws of at least seven states is implicated. Plaintiff does not have the ability to set forth all the state laws in more detail.

*7. Federal Tort Claims Act*

133.    28 USC § 2680(h) makes the United States liable for any assault, battery, false imprisonment, false arrest, and abuse of process committed any officer of the United States who is empowered by law to execute searches.

134.    TSA Transportation Security Officers are officers of the United States empowered by law to execute searches and to seize evidence related to alleged Federal offenses.

135.    The United States is liable for these torts.

136.    Three separate claims were presented to the TSA for these actions:

    a.   as to the 2013-03-01 SFO incident

    b.   as to TSA's handling of Plaintiff's Rehabilitation Act grievances

    c.   as to the 2016-12-16 BOS incident

137.    The TSA's unlawful actions prevented Plaintiff from knowing the full scope of the issues raised in this suit in a timely manner, creating equitable tolling of the FTCA deadline for filing a claim and giving rise to new information that Plaintiff could not have known at the time of the incident.

138.    Under *United States v. Wong / United States v. June,* 135 S.Ct. 1625 (2015), "new information", *id.* at 1630, as well as "exercis[ing] due diligence in attempting to amend [Plaintiff's] complaint before the statutory deadline", *id.* (internal quote removed), create equitable tolling. The same is true for suits under the Civil Rights Act of 1964. *Id.* at 1635-37 (discussing equitable tolling of 42 U.S.C. § 2000e-16 claims, which are for this purpose indistinguishable from Plaintiff's Rehabilitation Act claims).

139.    This suit was filed within 6 months of TSA's first denial of Plaintiff's FTCA claims.

140.    Filing FTCA claims as to each of the incidents would have been futile, as evidenced by TSA's multi-year refusal to act, and deliberate obstruction, as to the SFO FTCA claim. Plaintiff was deterred from filing further claims due to TSA's intransigence.

*8. Bivens; 1st, 4th, 5th, and 14th Amendments*

141.    TSA's refusals to search, confiscations of medical liquids, detentions, assaults, interrogations, and other actions were not justified by, and did not serve, any sufficiently compelling government interest.

142.    TSA's actions violated clearly established case law in *Davis*, *Aukai*, and *Fofana*.

143.   TSA's actions were discriminatory on the basis of Plaintiff's disabilities and Plaintiff's speech (and refusal to speak) in upholding Plaintiff's rights.

144.   TSA's actions violated the Constitution and provide for individual liability under *Bivens*.

*9. Substantive & procedural due process / APA / Rehab Act*

145.   Plaintiff's administrative grievance was unlawfully obstructed for over 2 years.

146.   Critical documents were only disclosed after litigation.

147.   TSA personnel, including TSA counsel, conspired to refuse to investigate, and to delay, Plaintiff's grievance.

148.   The BOS BDOs knowingly lied in the federal investigation.

149.   TSA repeatedly promulgated *de facto* regulations about liquids screening without APA notice and comment.

150.   TSA personnel refused to obey TSA's rules.

151.   TSA supervisors and HQ refused to order its subordinates to obey TSA's rules.

*10. ADA & Rehab Act*

152.   TSA's liquids policies violate the Rehabilitation Act and ADA.

153.   TSA personnel violated the Rehabilitation Act in their actions against Plaintiff.

154.   MIA PD personnel violated the ADA in their actions against Plaintiff.

155.   Federal and state defendants are both liable under both the ADA and Rehabilitation Act, and *Bivens* and 1983, due to their collusion.

**Prayer for relief**

156. *Therefore*, Plaintiff respectfully asks that this Court:

157. Declare that Defendants have obstructed justice, and permanently enjoin further obstruction;

158. Declare that the TSA personnel committed the listed torts;

159. Compel Defendants to produce all factual information and documents gathered, considered, or produced in relation to TSA's response to the grievances and/or appeals thereof;

160. Compel defendants to cooperate with discovery regarding the above claims;

161. Declare that the law at issue is clearly established;

162. Declare that agency and official-capacity defendants lack immunity and are liable;

163. Declare that individual-capacity defendants lack qualified immunity and are personally liable;

164. Declare that agency defendants' actions were deliberate, arbitrary, and capricious;

165. Declare that individual defendants engaged in civil conspiracy;

166. Declare that TSA's medical liquids policies are unconstitutional, and permanently enjoin their use;

167. Declare that Defendants' actions have created equitable tolling of FTCA claims regarding the grievances and that Plaintiff's FTCA claims were timely and exhausted;

168. Award Plaintiff damages in an amount to be determined at jury trial, to be taken against all Defendants;

169. Award Plaintiff attorney's fees (including any expert's fees), litigation costs, and all other costs of action;

170.    Award declaratory and injunctive relief;

171.    Certify the classes named above;

172.    Award damages, declaratory, and injunctive relief to all class members;

173.    Sanction, and refer for criminal prosecution and/or legal bar review, all individual defendants for whom there is reasonable suspicion of violating criminal law or legal professional standards; and

174.    Grant such other and further relief as this Court may deem just and proper.

Respectfully submitted,
Sai, *plaintiff pro se*
legal@s.ai
+1 510 394 4724 phone / +1 206 203 2827 fax
500 Westover Dr. #4514, Sanford, NC 27330