United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAI,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DAVID SMITH, ET AL.,<br><br>　　　　　Defendants. | Case No. 16-cv-01024-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 118 |

Before the Court is a motion to dismiss filed by the United States, the Department of Homeland Security ("DHS"), the Transportation Security Administration ("TSA"), David Smith, and James Adams (collectively, the "Federal Defendants"). ECF No. 118.

## I.　　REQUEST FOR JUDICIAL NOTICE

The Court first addresses the Federal Defendants' request for judicial notice. ECF No. 129. "As a general rule, [the Court] may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." United States v. Corinthian Colleges, 655 F.3d 984, 998–99 (9th Cir. 2011) (internal quotation marks and citations omitted). However, "[t]he [C]ourt may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).

The Federal Defendants request that the Court take judicial notice of two documents filed in other federal courts: (1) Defendants' Memorandum in Support of the Motion to Dismiss in Sai

v. Department of Homeland Security et al., No 14-1876 (RDM), 149 F. Supp. 3d 99 (D.D.C. 2015), and (2) Plaintiff's Memorandum in Support of a Request for an Extension in Sai v. Pekoske, No. 15-2356, ECF No. 1 (1st Cir. 2017). The Court may take judicial notice of court filings such as these. Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); see also Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007) (providing that a court "may take judicial notice of proceedings in other courts . . . if those proceedings have a direct relation to matters at issue."). Accordingly, the Court grants the Federal Defendants' request and takes judicial notice of the documents.

## II.  BACKGROUND[1]

Sai suffers from "multiple, permanent, episodic neurological disabilities." ECF No. 109 (Second Amended Complaint, or "SAC") ¶ 11. Symptoms of these disabilities include "painful, uncontrollable muscle spasms of the arm, neck, leg, or entire body, sometimes resulting in bruising and other injuries"; mutism; "extreme light sensitivity"; and "temporary, full-body paralysis, which completely prevents communication with most people." Id. The intake of food and liquid, and certain liquids in particular, helps Sai avoid the onset of these symptoms. Id. ¶¶ 13-14. For that reason, Sai "is careful to always have [food and drink] within immediate reach, especially while traveling." Id. ¶ 14. "Because muscle spasms can make drinking from a light container difficult and sometimes dangerous," Sai "normally uses heavier, shatterproof vessels (e.g., large plastic bottles), which provide more stability." Id. ¶ 15. Sai prefers to travel with liquids that can serve multiple purposes at once: "hydration, nourishment, electrolyte replacement, and nausea reduction." Id. ¶ 16. One such liquid is aloe juice. Id.

On March 1, 2013, Sai underwent passenger screening at San Francisco International Airport ("SFO"). Id. ¶ 26. Consistent with his usual practice, his carry-on luggage contained "medically necessary liquids—namely two transparent, plastic, 50.7-ounce bottles of aloe juice which contains electrolytes, including sugar and sodium." Id. Sai declared the aloe juice to a TSA

---

[1] The facts are drawn from Sai's SAC unless otherwise specified. At the motion to dismiss phase, the Court accepts as true all material facts alleged in the complaint, together with reasonable inferences to be drawn from those facts. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

2

representative, but was told by the initial screener that the bottles were too large. He requested to speak with a manager, but that person also told him the bottles were too large. (Although both individuals worked for Covenant Aviation Security, LLC ("Covenant"), a TSA contractor, Sai describes them as "TSA representatives.") This was frustrating to Sai, who believed that he had complied with TSA procedures and that he had the right to carry the containers with him pursuant to TSA's medical liquids policy.

As the screening process extended for more than twenty minutes, Sai "began to experience onset symptoms, such as visible hand and arm tremors." When Sai reached for a bottle of aloe juice to address the spasms, a TSA representative "put his hand on top of Sai's hand and physically prevented Sai from picking up the bottle." Id. ¶ 37. Sai asked to drink some of the juice to treat Sai's escalating medical needs, but the agent offered Sai only a small paper cup of water, and two small paper cups full of the aloe juice, which Sai struggled to drink and spilled because of the muscle spasms. Id. ¶¶ 49-58. TSA representatives treated Sai's medical condition lightly and did not believe that Sai required juice for treatment. Id. ¶¶ 40-41.

TSA representatives tested Sai's liquids for explosives, and the tests registered negative. Id. at 14. TSA representatives ultimately instructed Sai to either transfer the juice into 32 individual 3.2 ounce bottles, abandon the juice, or place the juice in checked luggage, to which Sai would not have access during the flight. Id. ¶¶ 51-58. Sai ultimately abandoned the aloe juice. Id. The incident took place over nearly one hour. Id. ¶ 82.

Sai alleges that the actions of the TSA representatives violated TSA's medical liquid policy as set forth in a September 25, 2006 memorandum from Sandra Cammaroto, Division Manager, TSA Office of Screening of Persons with Disabilities, entitled "Changes in Allowances for Persons with Disabilities at Airport Security Checkpoints." ECF No. 109-1. Pursuant to that memo, which Sai attaches to his complaint, passengers with disabilities are not required to place their liquids in 3 ounce containers, as other passengers are required to do. Instead, "if the liquid medications are in volumes larger than 3 oz. each, they . . . must be declared to a Transportation Security Officer . . . . Declared liquid medications and other liquids for disabilities and medical conditions must be kept separate from all other property submitted for x-ray screening." Sai

alleges that he complied with this policy. The same memo provides that while "it is recommended . . . that passengers bring along any supporting documentation . . . regarding their medication needs," it is not required. It also states that "[t]o ensure a smooth screening process, passengers are encouraged to limit quantities to what is needed for the duration of the flight."

As a result of the actions of the TSA representatives, Sai suffered a financial loss of the value of the juice (approximately $6.00), muscle tremors during the screening, worsened tremors for the hours following the screening, and a general medical deterioration, which contributed to Sai's loss of a job. ECF No. 109 ¶¶ 62-70. In sum, Sai suffered a medical "episode that could have been prevented, or at least ameliorated, if TSA . . . had obeyed TSA's medical liquid policy." Id. ¶ 4.

Sai's SAC alleges that the Federal Defendants and Covenant violated TSA policy and various federal laws and tort protections when they refused to allow Sai to fly with medically necessary liquids. ECF No. 109. Sai asserts claims for negligent supervision under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, against the Federal Defendants; assault, battery, and negligence against Covenant; denial of rights under the Rehabilitation Act, 29 U.S.C. § 794, against the Federal Defendants[2]; denial of rights under the Americans with Disabilities Act, 42 U.S.C. § 12101, against Covenant; and violations of the Administrative Procedures Act against unspecified defendants (but presumably against the Federal Defendants). Id. ¶¶ 77-135. Sai seeks injunctive relief, damages, civil penalties, and fees and costs. Id. ¶ 146.

The Federal Defendants now move to dismiss the claims against them. ECF No. 118.[3] With regard to Sai's FTCA claim, they argue that Sai has sued defendants who are not subject to the FTCA; that the United States is not liable for intentional torts committed by independent contractors under the FTCA; and that any negligent supervision claim falls within the

---

[2] Sai is not clear about the section of the Rehabilitation Act under which he is proceeding, but the Federal Defendants' motion assumes that he is proceeding under Section 504, 29 U.S.C. § 704, Sai provides no reason to challenge this assumption, and it is the most plausible basis for relief.

[3] The remaining defendant in this case, Covenant, also filed a motion to dismiss Sai's SAC, ECF No. 121, but later withdrew their motion. ECF No. 126. Covenant answered the complaint on October 19, 2017. ECF No. 127.

1    discretionary function exception to the FTCA. They argue that Sai's Rehabilitation Act claim is
2    barred by the doctrine of res judicata; that if it not so barred, the claim can only be pled against the
3    Secretary of the Department of Homeland Security, who is the only proper defendant; and that Sai
4    cannot recover money damages under the Rehabilitation Act.  Finally, the Federal Defendants
5    argue that to the extent that plaintiff seeks to challenge TSA's procedures for screening liquids
6    under the Rehabilitation Act, that challenge may only be presented in a Court of Appeals in the
7    first instance.

### III.    LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate . . . where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  For purposes of the motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party," here Sai. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  "While a complaint . . . does not need detailed factual allegations, [it] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In other words, a pleading must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

As for the motion to dismiss for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). To determine what standard the plaintiff must meet, the Court must first determine whether the Federal Defendants have mounted a facial or factual attack on Sai's jurisdictional claims. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone v.

1 Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

2     The Federal Defendants mount two meaningful jurisdictional attacks: (1) that Sai's negligent supervision claims falls within the FTCA's discretionary function exception, and (2) that the Court lacks jurisdiction to hear a challenge to TSA's order regarding liquids. ECF No. 118 at 12, 17. The first is entirely facial: the Federal Defendants allege that Sai's claims, on their face, fall under the exception because the TSA's role in supervising its independent contractors is within its discretion as a matter of law. Id. at 12-15.[4] The second constitutes a factual attack because "it 'relies[] on extrinsic evidence and [does] not assert lack of subject matter jurisdiction solely on the basis of the pleadings.'" Safe Air, 373 F.3d at 1039 (quoting Morrison v. Amway Corp., 323 F.3d 920, 924 n. 5 (11th Cir. 2003)). The Federal Defendants include a declaration from Brenna Murphy, Section Chief of Screening Procedures for the Office of Security Operations for the TSA to show the liquids directives constitute an "order" for purposes of 49 U.S.C. § 46110, which vests jurisdiction to review such orders in the courts of appeal and not the district court. ECF No. 119 at 4. Murphy's declaration describes her responsibilities for developing Standard Operating Procedures ("SOPs"), including the liquids directives at issue in this case. Id. at 2. Murphy describes the TSA's history and mission, how SOPs are developed and revised, that contractors at SFO are bound by SOPs, what the current SOPs regarding liquids are, and that the SOPs are final agency decisions. See generally, id.

    The Court does not consider Murphy's declaration with respect to the motion to dismiss under Rule 12(b)(6) because "[a]s a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted). There are two exceptions to this rule, for materials properly submitted as part of the complaint and judicially noticed facts, but these exceptions do not apply to Murphy's declaration. See id. at 688–89.

    The Court does consider Murphy's declaration with respect to the motion to dismiss under

---

[4] Federal Defendants' remaining jurisdictional attacks, that only the United States is a properly named defendant under the FTCA and that only the agency head is a properly named defendant under the Rehabilitation Act, are also facial attacks. ECF No. 118 at 11, 18.

1  Rule 12(b)(1), however, because "when considering a motion to dismiss pursuant to Rule 12(b)(1)
2  the district court is not restricted to the face of the pleadings, but may review any evidence, such
3  as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."
4  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988); see also White v. Lee, 227 F.3d
5  1214, 1242 (9th Cir. 2000) (concluding that the district court may look beyond the pleadings to the
6  parties' evidence without converting the motion to dismiss into one for summary judgment). The
7  Court concludes that the Federal Defendants mounted a factual attack on jurisdiction when they
8  provided the Murphy declaration to attack jurisdiction. See Edison v. United States, 822 F.3d 510,
9  517 (9th Cir. 2016) (concluding that the United States mounted a factual attack when it filed an
10  affidavit challenging prisoner defendants' allegations that the government owed them a legal
11  duty).

In response to a factual attack, a plaintiff must present "affidavits or any other evidence necessary to satisfy [their] burden of establishing that the court, in fact, possesses subject matter jurisdiction." Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1121 (9th Cir. 2009) (citation omitted). In evaluating the evidence, the Court "need not presume the truthfulness" of the plaintiff's allegations. White, 227 F.3d at 1242. Any factual disputes, however, must be resolved in favor of the plaintiff. Dreier v. United States, 106 F.3d 844, 847 (9th Cir. 1996).

Pro se pleadings like Sai's are liberally construed, particularly where civil rights claims are involved. Christensen v. C.I.R., 786 F.2d 1382, 1384–85 (9th Cir. 1986); Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).

**IV.   DISCUSSION**

    **A.   Rule 12(b)(1) jurisdictional defects**

        **1.   FTCA claims**

            **a.   Whether the Court lacks jurisdiction over Sai's negligent supervision claim because it falls under the discretionary function exception**

The Federal Defendants argue that Sai's negligent supervision claim must be dismissed because it falls under the FTCA's discretionary function exception. ECF No. 118 at 12. The SAC's first cause of action alleges that the Federal Defendants negligently supervised its

contractor, Covenant, and are therefore liable for intentional torts, including battery and assault, committed by Covenant. ECF No. 109 at 17-18. It is unclear whether Sai also alleges that the Federal Defendants are liable for negligent supervision for Covenant's acts of negligence. Id. at 22-23. The Federal Defendants bear the burden of showing the discretionary function exception applies. Sigman v. United States, 217 F.3d 785, 793 (9th Cir. 2000).

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994) (citations omitted). The terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit. See United States v. Testan, 424 U.S. 392, 399 (1976). Under the FTCA, the United States waives its immunity from suit "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b)(1).

There is a "discretionary function exception" to this waiver of liability, however. The discretionary function exception applies to conduct "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved was abused." 28 U.S.C. § 2680(a); see also Nurse v. United States, 226 F.3d 996, 1000 (9th Cir. 2000) (holding that the FTCA's statutory exceptions are jurisdictional). If established, the discretionary function exception deprives the court of jurisdiction to hear a claim. Kelleher v. Fed. Deposit Ins. Corp., No. 10-cv-03766-MMM (AJWx), 2011 WL 13216976, at *3 (C.D. Cal. Feb. 11, 2011). The burden is on the United States to establish the exception. Borten v. Fed. Deposit Ins. Corp., No. 10-cv-03765-MMM (AJWx), 2011 WL 13216988, at *3 (C.D. Cal. Feb. 10, 2011) (citing Prescott v. United States, 973 F.2d 696, 702 (9th Cir. 1992)).

The Federal Defendants are statutorily required to oversee their contractors. 28 U.S.C. § 44920(e) ("The Under Secretary shall provide Federal Government supervisors to oversee all screening at each airport at which [contracted] screening services are provided."). The Federal Defendants explain, however, that this statutory requirement to "oversee all screening at each airport" in which it utilizes contractors, does not further specify how the Federal Defendants

8

should supervise contractors, and therefore "supervision of independent contractor screeners was left to the Administrator's discretion." ECF No. 118 at 14.

The Federal Defendants are correct that supervision of contractors falls within the discretionary function exception. The Ninth Circuit has made clear that claims for negligent supervision of employees falls squarely under the discretionary function exception. See, e.g., Nurse, 226 F. 3d at 1001-1002; Gager v. United States, 149 F.3d 918, 920-21 (9th Cir. 1998) (holding a claim for negligent supervision and training of employees fell under the discretionary function exception because no regulation or statute required post office employees to be trained in bomb detection). The Ninth Circuit has also concluded that claims based on negligent supervision of government contractors fall within the discretionary function exception. See In re Consol. U.S. Atmospheric Testing Litig., 820 F.2d 982, 996 (9th Cir. 1987). Because Sai's negligence claims against the Federal Defendants fall under the discretionary function exception, they are not actionable and this Court dismisses Sai's FTCA claims for lack of jurisdiction. Vickers v. United States, 228 F.3d 944, 950 (9th Cir. 2000) ("Under the FTCA, however, negligence in performing discretionary functions is not actionable.") (citation omitted).[5]

### b. Whether the Court has jurisdiction to review the Federal Defendants' vicarious liability for torts committed by its contractor

The "FTCA's limited waiver of sovereign immunity explicitly excludes 'any contractor with the United States' from its definition of 'employee of the government[.]'" Edison, 822 F.3d at 517 (citing 28 U.S.C. § 2671); see also 28 U.S.C. § 2671 (defining Federal agency to exclude "any contractor with the United States"). The independent contractor exception therefore "protect[s] the United States from vicarious liability for the negligent acts of its independent contractors." Edison, 822 F.3d at 518; see also Rooney v. United States, 634 F.2d 1238, 1243 n.6 (9th Cir. 1980). Accordingly, this Court lacks jurisdiction over FTCA claims which seek

---

[5] The Federal Defendants are correct that only the United States may be sued under the FTCA. ECF No. 118 at 11; Kennedy v. U.S. Postal Serv., 145 F.3d 1077, 1078 (9th Cir. 1998); see also 28 U.S.C. § 2679(d). As a result, claims brought against agencies and individuals, including the TSA, DHS, David Smith, and James Adams must be dismissed. Sai does not object to the dismissal of the parties, so the Court grants the dismissals of FTCA claims against any party other than the United States, as a separate and independent reason for dismissal. ECF No. 125 at 15.

9

vicarious liability for the acts of independent contractors through the independent contractor exception. In opposing the Federal Defendants' motion to dismiss, Sai disclaims any intent to hold the Federal Defendants vicariously liable for intentional torts committed by independent contractors. ECF No. 125 at 15.

The analysis cannot end here, however, because "the independent contractor exception is not a complete bar to liability any time the United States employs an independent contractor. Some duties of care are nondelegable; others are retained by the government, if not delegated." Edison, 822 F.3d at 514. For example, the Ninth Circuit concluded that the federal government could be held liable when it did not delegate responsibility to its contractor for warning prisoners of a risk of infection, modifying or building safe structure to houses prisoners, and developing policies to prevent illness. Id. at 519-20; see also Yanez v. United States, 63 F.3d 870, 875 (9th Cir. 1995) (holding that the federal government could be liable under the FTCA for a nondelegable duty to protect against inherently dangerous conditions in an explosives plant when it was aware of such conditions). In this manner, the United States remains directly liable for its own torts. Yanez, 63 F.3d at 874. In other words, the "independent contractor exception . . . has no bearing on the United States' FTCA liability for its *own* acts or omissions." Edison, 822 F.3d at 528. Sai does appear to argue that the Federal Defendants are directly liable for some or all of the torts claimed in the SAC.

Sai argues, for example, that under California law, the Federal Defendants held a nondelegable duty to control its independent contractor, but does not elaborate on that alleged duty or its source. ECF No. 125 at 16. Sai points only to 28 U.S.C. § 44920(e), which establishes that federal employees will supervise contractors in screening passengers. The Court concluded supra that it lacks jurisdiction to review any claims for negligent supervision under the discretionary function exception on the basis of the same statute. Because in California, a principal is not liable for the torts of its independent contractor absent an exception, and Sai has not pointed the Court to

any viable exception, the Court has no jurisdiction to review a claim for vicarious liability. Yanez, 63 F.3d at 872. Accordingly, Sai's argument based on the vicarious liability exception also fails.[6]

### 2. Whether the Court has jurisdiction to hear Sai's APA challenges to TSA's liquids directives

The Federal Defendants argue that this Court lacks jurisdiction to hear Sai's challenges to TSA's liquids ban and special needs memo (collectively, "liquids directives") under the Administrative Procedure Act ("APA") because under 49 U.S.C. § 46110, jurisdiction to review TSA's airport security screening procedures rests exclusively with the courts of appeal. ECF No. 118 at 18. Sai's seventh through tenth claims allege that the liquids directives violate the APA. ECF No. 109 ¶¶ 116-35. Sai alleges in the SAC that the directives "constitute[] a final agency action," id. ¶ 122, but argues in the opposition that the directives are not final orders under Section 46110. ECF No. 125 at 23.

Section 46110 establishes that "a person disclosing a substantial interest in an order issued by the Secretary of Transportation . . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business." 49 U.S.C. § 46110. Section 46110 deprives this Court of jurisdiction over challenges to orders covered by that section. Id. "Courts have given a broad construction to the term 'order.'" Gilmore v. Gonzales, 435 F.3d 1125, 1132-33 (9th Cir. 2006) (citations omitted). In determining whether a TSA directive is an order, the Ninth Circuit has explained "finality is key." Id. A directive is final if it "imposes an obligation, denies a right, or fixes some legal relationship. In other words, if the order provides a definitive statement of the agency's position, has a direct and immediate effect on the day-to-day business of the party asserting wrongdoing, and envisions immediate compliance with its terms." Id. (citations and quotation marks omitted). That a directive is "revised frequently, as often as weekly" does not determine finality, rather, what

---

[6] As an additional and separate reason for dismissal, the United States cannot be held liable for the intentional torts such as battery and assault which Sai alleges in the SAC. Levin v. United States, 568 U.S. 503, 507 (2013); ECF No. 109 ¶¶ 86-97.

11

matters is whether the order has a direct and immediate effect. Id.; see also Durso v. Napolitano, 795 F. Supp. 2d 63, 67 (D.D.C. 2011) (concluding that a SOP regarding intensive screening technology was final because it had immediate effect although it was subject to revision).

The SOPs at issue are orders, as they have final, direct, and immediate effects on travelers, including those with medical conditions like Sai. As the Federal Defendants explain, the liquids directives "set forth mandatory procedures" which impose obligations by requiring travelers to declare or abandon liquids "in order to enter the sterile area of any airport." ECF No. 118 ¶ 8. Section Chief Murphy explains that the liquids directives SOP "sets forth in detail mandatory procedures that . . . individuals must follow." ECF No. 119 at 3. And the directives envision "immediate compliance," as Sai personally experienced when Sai was required to either abandon the liquids or Sai's travel plans. ECF No. 109 at 14; Gilmore, 435 F.3d at 1133 ("Because the Security Directive prevents from air travel those who . . . refuse to comply with the identification policy, it has a 'direct and immediate' effect on the daily business of the party asserting wrongdoing.").

Sai argues that the liquids directives are not final because they only make "recommend[ations]" and set expectations for passengers. ECF No. 124 at 23-25. The liquids directives do provide some suggestions to travelers designed to facilitate their passage through the screening process, but this does not alter the regulations' immediate, binding effect on passengers by banning liquids in certain amounts and requiring the declaration of larger liquids. ECF No. 109-1. Moreover, that the liquids directives are "revised as necessary" does not make them not final, as they continue to have immediate effect and constitute a "final determination" by TSA. ECF No. 119 at 3. In sum, the liquids directives "set forth firm requirements that apply to TSA and airline passengers alike" by "laying out procedures that passengers must follow if they wish to gain access to the restricted areas of an airport terminal." Durso, 795 F. Supp. 2d at 67.

The Ninth Circuit has also explained that although "the existence of a reviewable administrative record is the determinative element" in determining finality, an adequate record may consist of "little more" than a letter. Gilmore, 435 F.3d at 1133. Section Chief Murphy's

detailed declaration is more than sufficient to establish the necessary finality. ECF No. 119.[7] The Court concludes that the finality requirement is satisfied.

In addition to showing finality, the Federal Defendants must also show that the liquids directives were "issued by an appropriate government official and under proper authority." Gilmore, 435 F.3d at 1133. According to her declaration, as the Screening Procedures Section Chief, Murphy is responsible for "developing, authoring, and implementing" SOPs including the liquids directives and is therefore "familiar with . . . the agency's policies and procedures with respect to liquids . . . that may be permitted through a screening checkpoint." ECF No. 119 at 2. As Section Chief Murphy explains, she derives her authority to author SOPs from the Aviation Transportation Security Act, 49 U.S.C. § 114 et seq. Id. at 4. The Court concludes that the liquids directives constitute an order under Section 46110 and that this Court accordingly lacks jurisdiction to review Sai's APA claims.

Finding the APA claims fail for want of jurisdiction, this Court may transfer the action to the court of appeals. "Whenever a civil action is filed in a [federal] court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. The statute authorizes this Court to transfer a case if (1) the court of appeals would have been able to exercise jurisdiction on the date it was filed in the district court; (2) the district court lacked jurisdiction; and (3) the transfer is in the interests of justice. Castro-Cortez v. I.N.S., 239 F.3d 1037, 1046 (9th Cir. 2001) abrogated on other grounds by Fernandez-Vargas v. Gonzales, 548 U.S. 30 (2006).

First, the Court must determine whether this action could have been brought in court of appeals in the first instance. Williams v. United States Dep't of Agric., No. 13-CV-00508-JST, 2013 WL 5567486, at *4 (N.D. Cal. Oct. 7, 2013). Sai currently has a pending petition for review challenging the TSA policies in the First Circuit, a court which does have appropriate

---

[7] The Federal Defendants assert that if Sai brought a challenge to the liquids policy in the courts of appeal, they would readily provide a full administrative record. ECF No. 118 at 21 n.5.

13

jurisdiction.[8] The Federal Defendants have not raised jurisdictional concerns in that case. See generally Sai v. Pekoske, 15-2356 (1st Cir. 2017). Moreover, Sai submitted Section Chief Murphy's declaration to the First Circuit and requested review of the SOPs discussed in her declaration. Sai v. Pekoske, 15-2356 (1st Cir. 2017), ECF No. 63-Ex.1.[9] The Court concludes that Sai's APA challenges to the TSA liquids directives could have been, and were, brought in the courts of appeals in the first instance.

Second, the Court must determine whether it lacks jurisdiction, which it has so concluded. See supra.

Third, the Court must determine whether it is in the interests of justice to transfer the case. The Ninth Circuit explained that a transfer was in the interest of justice where claims called "into question the propriety of the Government's airline passenger identification policy and implicate[d] the rights of millions of travelers who are affected by the policy." Gilmore, 435 F.3d at 1134. As the Court explained "[i]n these unique circumstances, it is of the utmost importance that we resolve [the] claims without further delay." Id. Because Sai already has a case pending in the courts of appeal addressing the same issue presented here such that the addition of this case would not provide additional relief, and given that the First Circuit case is further along, the Court concludes that the transfer is not in the interests of justice. Accordingly, the Court declines to transfer Sai's claim.

### 3. Whether Rehabilitation Act claims over Federal Defendants other than the Secretary of the Department of Homeland Security are proper

In a Rehabilitation Act case against a federal agency, the proper defendant is the head of that agency. Johnston v. Horne, 875 F.2d 1415, 1420 (9th Cir.1989); see also McAuliffe v. U.S.

---

[8] The Court takes judicial notice of all publicly filed documents in the First Circuit referenced in this order. See Bias v. Moynihan, 508 F. 2d 1212, 1335 (9th Cir. 2007) (providing that district courts "may take judicial notice of proceedings in other courts . . . if those proceedings have a direct relation to matters at issue.").

[9] The Federal Defendants argue that Sai should be judicially estopped from claiming in this litigation that the liquids directives are not an order on the basis of Sai's assertion in the First Circuit that they are an order. ECF No. 128 at 12. Because the Court determines that the directives are an order for independent reasons, as set forth above, the Court declines to consider this separate argument.

14

Dep't of Veterans Affairs, No. C06-07353WHA, 2007 WL 2123690, at *2 (N.D. Cal. July 23, 2007). Individuals may not be sued in their individual capacity for violations of the Rehabilitation Act. Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002). Sai does not contest this deficiency in his complaint, and seeks only to add the secretary of the DHS as a defendant. ECF No. 125 at 22. The Court grants leave to Sai to add the Secretary of the DHS as a defendant, and dismisses Sai's Rehabilitation Act claims against all other Federal Defendants.

### B. Motion to Dismiss Pursuant To Rule 12(b)(6)

#### 1. Whether Sai's Rehabilitation Act claim is barred by *res judicata*

The Federal Defendants argue that because Sai raised Rehabilitation Act claims on the basis of the March 2013 SFO incident in an earlier case in the District Court for the District of Columbia, Sai v. Department of Homeland Security et al., No 14-1876 (RDM), 149 F. Supp. 3d 99 (D.D.C. 2015) ("D.C. Action"), Sai is barred from raising Rehabilitation Act claims here.[10] ECF No. 118 at 15.[11] Sai argues that *res judicata* should not apply because the pertinent facts in the D.C. Action addressed procedural shortcomings in processing Sai's administrative complaint regarding the March 2013 incident, and thus constituted a different claim than the present action. ECF No. 125 at 21.

"In order for *res judicata* to apply there must be: 1) an identity of claims, 2) a final judgment on the merits, and 3) identity or privity between parties." W. Radio Servs. Co. v. Glickman, 123 F.3d 1189, 1192 (9th Cir. 1997) (citation omitted). There is identity or privity between the parties, because the parties are the same. It is not clear, however, whether there is an

---

[10] "[W]hen, as here, the defense does not raise disputed issues of fact, *res judicata* can be asserted in a motion to dismiss." Oracle Am., Inc. v. Appleby, No. 16-CV-02090-JST, 2016 WL 5339799, at *2 (N.D. Cal. Sept. 22, 2016).

[11] According to the Federal Defendants, nothing prevented Sai from raising Sai's current Rehabilitation Act claim in the prior action, as there was no exhaustion requirement for such claims. ECF No. 118 at 16-17 n.3. Sai argues that Sai was required to administratively exhaust the current Rehabilitation Act claim, which Sai could not do prior to the D.C. Action, so *res judicata* cannot apply. ECF No 125 at 21. Both parties are incorrect. While there is an exhaustion requirement for Rehabilitation Act claims, see Leong v. Potter, 347 F.3d 1117, 1122 (9th Cir. 2003), the availability of exhaustion in a prior action is generally no barrier to the applicability of *res judicata*. Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 714–15 (9th Cir. 2001).

15

identity of claims. "Identity of claims exists when two suits arise from the same transactional nucleus of facts." Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1078 (9th Cir. 2003) (internal quotation marks omitted). "Transactions," in turn, "are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Restatement (Second) of Judgments § 24 (1982); see also Feminist Women's Health Ctr. v. Codispoti, 63 F.3d 863, 868 (9th Cir. 1995) (holding that *res judicata* bars subsequent action when the plaintiff "had to produce substantially the same evidence in both suits to sustain its case").

It is not clear that Sai's claims for substantive violations of Sai's rights in the form of denied access to medically necessary liquids in March 2013 derive from the same transactional nucleus of facts as the D.C. Action, which alleged exclusively claims based on facts regarding the Federal Defendants' failure to respond to Sai's administrative complaint regarding the same incident. See Sai, 149 F. Supp. 3d at 104 ("Notably, the present suit does not directly seek redress for Plaintiff's alleged mistreatment at the security checkpoints. Rather, Plaintiff alleges that [the Federal Defendants] violated his rights by failing to respond to his complaints within the time period prescribed by the governing regulation."). The district court in the D.C. Action distinguished between the procedural failure to respond to administrative complaint claim in that case and Sai's "substantive" claim for the violation of Sai's rights. See id. at 119 ("Defendants' delay in responding to Plaintiff's complaint could well pose a barrier to any substantive claim that Plaintiff might ultimately seek to pursue . . . ."). Moreover, the district court in the D.C. Action concluded that Sai's cause of action arose under the APA, not the Rehabilitation Act. Id. at 118.[12]

---

[12] The Federal Defendants argue that because this Court's prior order dismissing Sai's claims included a heading "Claims Arising from the Incident at the SFO Airport," the procedural and substantive claims arise from the same transactional nucleus of operative fact. ECF No. 128 at 9. The Federal Defendant draw too much from this heading, which distinguished claims *arising from* the incident at the SFO airport from claims *arising from* incidents in other airports for which venue was not proper. ECF No. 97 at 9-11. Further undermining the Federal Defendants' argument, this Court separated out Sai's procedural and substantive claims and held that the procedural claims were barred by the doctrine of *res judicata* because the D.C. Action adjudicated an identical claim. Id. at 10-11. The Court also notes that the Federal Defendants earlier described the D.C. Action as regarding their failure "to respond to Plaintiff's administrative

The Federal Defendants argue that Sai's claims are barred because Sai could have brought them in his prior case, pointing to Ninth Circuit cases suggesting a broad reading of the *res judicata* doctrine. See Clark v. Yosemite Cmty. Coll. Dist., 785 F.2d 781, 786 (9th Cir. 1986). "Newly articulated claims based on the same nucleus of facts may still be subject to a *res judicata* finding if the claims could have been brought in the earlier action." Tahoe-Sierra Pres. Council, 322 F.3d at 1078; id. (describing "the relevant 'transactional nucleus of facts' governing the claims that could have been brought" as "encompass[ing] the enactment of [a development] Plan and its application to the plaintiffs' properties"). Under this broad conception, a plaintiff cannot avoid *res judicata* merely by alleging conduct not alleged in the prior action, or by pleading a new legal theory. See McClain v. Apodaca, 793 F.2d 1031, 1034 (9th Cir. 1986).

The standard in the Ninth Circuit is not as broad as the Federal Defendants assert. That court has explained "that courts have not always been clear that the phrase 'claims that were raised or could have been raised,' refers to legal theories arising out of the same transactional nucleus of facts, rather than to distinct causes of action. The contrary reading would suggest that any cause of action that could have been joined in the original action would be precluded, a point we rejected over four decades ago [in] Bankers Trust Co. v. Pac. Employers Ins. Co., 282 F.2d 106, 111 (9th Cir. 1960)." Hells Canyon Pres. Council v. U.S. Forest Serv., 403 F.3d 683, 686 (9th Cir. 2005); see also Whole Woman's Health v. Hellerstedt, 136 S. Ct. 2292, 2305-2308 (2016) (holding that unsuccessful pre-enforcement facial challenge to a Texas abortion clinic statute did not preclude an as-applied post-enforcement challenge as "lower courts normally treat challenges to distinct regulatory requirements as separate claims, even when they are part of one overarching [g]overnment regulatory scheme"). The Ninth Circuit has refused to apply *res judicata* to bar a second suit on a claim related to an earlier claim when the second claim could have been, but was not required to be, joined in the first action. Gallagher v. Frye, 631 F.2d 127, 130 (9th Cir. 1980). Sai's claim that the Federal Defendants failed to timely respond to Sai's administrative complaint in violation of the Rehabilitation Act is a different claim or cause of action from the present cause

complaint regarding the incident at San Francisco Airport." ECF No. 71 at 18.

of action, that the Federal Defendants denied Sai access to medically necessary liquids in violation of the Rehabilitation Act. See Black's Law Dictionary (10th ed. 2014) (defining cause of action as "a factual situation that entitles one person to obtain a remedy in court from another person"). The Court accordingly concludes that the Federal Defendants have not shown an identity of claims.

Finally, it is also unclear whether there was a final judgment on the merits in the D.C. action. ECF No. 118 at 17. This Court did previously conclude that the D.C. Action was a final judgment because summary judgment dismissal was a decision on the merits for *res judicata* purposes. ECF No. 97 at 11. However, as in Hells Canyon, the final judgment on the merits in the D.C. Action is not the end of the inquiry. 403 F.3d at 686. "[R]*es judicata* doctrine focuses on an identity of *claims,* specifying that a valid final adjudication *of a claim* precludes a second action *on that claim* or any part of it. That is to say, the 'final judgment' prong of the *res judicata* test is claim-specific." Id. (emphasis in original) (citation omitted). There was no final judgment on Sai's claims of mistreatment under the Rehabilitation Act in the D.C. Action. Accordingly, the Court concludes that Sai's Rehabilitation Act claims are not barred by *res judicata*, and declines to dismiss the claims on this basis.

### 2. Whether money damages are available under the Rehabilitation Act

Monetary damages are not available under Section 504 of the Rehabilitation Act because the federal government has not waived its sovereign immunity from suit. Lane v. Pena, 518 U.S. 187, 191-97 (1996). Any claims for monetary damages under the Rehabilitation Act are dismissed. Sai may seek equitable or injunctive relief only. See Davis v. Astrue, No. C-06-6108 EMC, 2011 WL 3651064, at *3 (N.D. Cal. Aug. 18, 2011) ("Lane did not foreclose the possibility that there could still be a private right of action under § 504 for injunctive or equitable relief.").

## CONCLUSION

The Federal Defendants' motion to dismiss is granted in its entirety.[13] The Court grants leave to amend to name the Secretary of the Department of Homeland Security as the sole defendant in Sai's Rehabilitation Act claim (Count Five). In all other respects, the motion is

---

[13] Counts 2, 3, 4, and 6 are brought only against Covenant, a defendant that is not the subject of this order. ECF No. 109 at 19-25.

granted with prejudice, as Sai has already had the opportunity to amend the complaint. Fed. R. Civ. P. 15(a); ECF Nos. 1, 57, 109.

Any amended complaint must be filed by February 16, 2018. Amendment must be limited to Sai's Rehabilitation Act claim against the Federal Defendants. If no amended complaint is filed, the Court will dismiss the Federal Defendants with prejudice.

**IT IS SO ORDERED.**

Dated: January 24, 2018

_____
JON S. TIGAR
United States District Judge