NAVI SINGH DHILLON (SBN 279537)
Navi.Dhillon@BakerBotts.com
DYLAN J. CROSBY (SBN 299536)
Dylan.Crosby@BakerBotts.com
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, California 94111
Telephone: (415) 291-6200

Attorneys for Plaintiff
SAI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SAI,<br><br>                Plaintiff,<br><br>        v.<br><br>COVENANT AVIATON SECURITY, LLC, *et al.*,<br><br>                Defendants. | Case No. 3:16-cv-01024-JST<br><br>**FOURTH AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Hon. Judge Jon S. Tigar<br>Courtroom 9 – 19th Floor<br><br>Action Filed: September 26, 2016 |

-1-

FOURTH AMENDED COMPLAINT                                    Case No. 16-cv-01024 JST

Plaintiff Sai brings this action against Defendants David P. Pekoske in his official capacity as Administrator of the Transportation Security Administration (TSA) and Kevin K. McAleenan in his official capacity as acting Secretary of the United States Department of Homeland Security (DHS) (together, Defendants or Government) and alleges as follows:

## INTRODUCTION

1.　　This action concerns efforts by a disabled individual to travel via airplane. Plaintiff Sai has permanent, episodic, neurological disabilities that can cause, among other things, painful muscle spasms, mutism, and paralysis.  Sai's disabilities require Sai to travel at all times with certain liquids, especially those with electrolytes, in sufficient volumes.  These liquids are critical in preventing or minimizing the effects of Sai's disabilities.  Contrary to its own rules, the Government has a pattern and practice of denying individuals the right to travel with liquids that present no safety or security concerns.

2.　　The TSA has a formal "Special Needs" rule that allows individuals with disabilities to travel through security checkpoints at airports with medically necessary items, such as juice and other liquids.

3.　　On March 1, 2013, Sai underwent passenger screening at the TSA security checkpoint at San Francisco International Airport (SFO).  Sai was carrying two 1.5-liter (50.7-ounce) bottles of aloe juice, which alleviate the symptoms of Sai's disabilities.  Together, both bottles were reasonable in amount and needed to address Sai's medical conditions.

4.　　At the TSA checkpoint, Sai declared the juice as medically necessary to a TSA representative.  TSA representatives then tested the liquids using x-ray and explosive trace detection technology to determine whether the bottles of aloe juice posed safety or security concerns.  Both juice bottles cleared the screening process, as they did not present any security or safety risks.  Nonetheless, the Government refused to allow Sai to travel with liquids that Sai needed for medical reasons.

5.　　The Government told Sai that they did not believe that the juice was medically necessary and that, regardless, the volume Sai had was excessive.

6.    The Government gave Sai the following options: (i) transfer the juice into thirty-two individual 3.2-ounce bottles, (ii) place the juice into checked luggage, or (iii) leave the juice behind.  Sai did not have reasonable access to individual 3.2-ounce bottles and no such bottles were offered by the Government.  Placing the juice into checked luggage did not address Sai's disability and need to keep on Sai's person appropriate liquids in reasonable quantities and containers at all times.

7.    Presented with no other reasonable option, Sai was forced to abandon the juice.

8.    By prohibiting Sai from travelling with necessary medical liquids, the Government caused Sai to suffer a painful episode of muscle spasms during the screening process, worsened Sai's tremors for hours following the screening, and subjected Sai to prolonged and severe emotional distress.  The incident also contributed to a significant deterioration of Sai's medical condition.  If the Government had allowed Sai to travel with the liquids at issue, Sai's injuries would not have occurred.

9.    As a result of the Government's conduct, Sai has suffered and continues to suffer irreparable harm for which there is no adequate remedy at law.  Sai seeks an order directing the Government to comply with its own Special Needs Rule and applicable disability laws.

## PARTIES

10.    Plaintiff Sai is an individual United States citizen that resides in the United Kingdom.

11.    Defendant Kevin K. McAleenan is the acting Secretary of DHS and is being sued in his official capacity.  The DHS is responsible for the security of the United States, including customs, border, and immigration enforcement, emergency response to natural and manmade disasters, antiterrorism work, and cybersecurity.

12.    Defendant David P. Pekoske is the Administrator of the TSA and is being sued in his official capacity.  The TSA is responsible for the nation's transportation systems, including security operations at SFO and nearly 450 other airports throughout the United States.  The TSA is an executive agency of the DHS.

FOURTH AMENDED COMPLAINT    Case No. 16-cv-01024 JST

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over claims made against the Government under 28 U.S.C. § 1331, 5 U.S.C. §§ 701-706, and 29 U.S.C. §§ 794-794a.

14. An actual, justiciable controversy now exists between Sai and the Government, and the requested relief is proper under 28 U.S.C. §§ 2201-2202, 5 U.S.C. §§ 701-706, and 29 U.S.C. §§ 794-794a.

15. Venue is proper in the United States District Court for the Northern District of California because "a substantial part of the events or omissions giving rise to the claim[s] occurred" within this Judicial District.  28 U.S.C. § 1391(b)(1).

16. Intradistrict Assignment is proper in the San Francisco Division of the Northern District of California because "a substantial part of the events or omissions which give rise to the claim occurred" in San Francisco County, California.  L. R. 3-2(c).

17. The Government has waived sovereign immunity in this action, including pursuant to 5 U.S.C. § 702 and 29 U.S.C. §§ 794-794a.

18. Sai has exhausted, or is lawfully excused from exhausting, all available administrative remedies.

**ADMINISTRATIVE PROCEDURE ACT**

19. The Administrative Procedure Act (APA) provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  In general, only final agency actions are reviewable under the APA.  5 U.S.C.  § 704.

20. Under the APA, the reviewing court "decide[s] all relevant questions of law, interpret[s] constitutional and statutory provisions, and determine[s] the meaning or applicability of the terms of an agency action."  5 U.S.C. § 706.  The APA requires the reviewing court to (1) compel agency action "unlawfully withheld or unreasonably delayed" and (2) hold unlawful and set aside agency action, findings, or conclusions that are "arbitrary, capricious, an abuse of

-4-

discretion, or otherwise not in accordance with law" or that are "without observance of procedure required by law." *Id.* § 706(1)-(2)(A), (2)(D).

21.     An agency action is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Assoc. v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).

22.     Agency action is arbitrary and capricious if inconsistent with the agency's own policies, procedures, precedents, or practices. *See Nat'l Conservative Political Action Comm. v. FEC*, 626 F.2d 953, 959 (D.C. Cir. 1980) ("Agencies are under an obligation to follow their own regulations, procedures, and precedents, or provide a rational explanation for their departures."); *Andrzejewski v. F.A.A.,* 563 F.3d 796, 799 (9th Cir. 2009) ("An agency's decision is arbitrary and capricious if the agency fails to follow its own precedent or fails to give a sufficient explanation for failing to do so.").

23.     An agency action is also arbitrary and capricious under the APA if the agency changes prior policies and standards without acknowledging and providing a reasoned explanation for the change. *FCC v. Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009).

## STATEMENT OF FACTS

**Sai's Disabilities.**

24.     Sai has multiple, permanent, episodic neurological disabilities.  Among other symptoms, Sai's disabilities cause: (i) painful, uncontrollable muscle spasms; (ii) extreme light sensitivity; and (iii) temporary, full-body paralysis and mutism.

25.     Sai can normally sense the onset of an episode and can take immediate preventative or ameliorative actions to minimize any symptoms.  In particular, consuming certain liquids providing hydration, nourishment, nausea reduction, and especially electrolyte replacement during the onset period can help prevent or minimize the symptoms of an episode.

For this reason, Sai is careful to always have appropriate liquids in sufficient quantities while traveling. Aloe juice is one such liquid that meets Sai's needs that Sai routinely travels with.

26. Additionally, because muscle spasms can make drinking from a light container difficult, Sai normally travels with heavier, shatterproof vessels (*e.g.,* large plastic bottles), which provide more stability. Small containers (e.g., 3.2 ounces) are not workable for Sai due to the nature of Sai's disabilities. For example, during a muscle spasm, it is difficult for Sai to hold and drink from a small container.

27. Due to Sai's medical conditions, Sai's doctors have recommended that Sai travel with at least 2 to 3 liters or approximately 68 to 101 ounces of medical liquids, including energy containing fluids, per day.

**TSA's Medical Liquids Rule.**

28. On August 10, 2006, the TSA issued a ban prohibiting passengers from taking liquids, aerosols, and gels through security checkpoints onto airplanes (Liquids Ban).

29. On September 25, 2006, the TSA adjusted its formal policy banning liquids, aerosols, and gels in a document titled "Changes in Allowances for Persons with Disabilities at Airport Security Checkpoints" (i.e., the Special Needs Rule). The Special Needs Rule modified the Liquids Ban. It allows passengers to take liquids onto planes in "**travel-size toiletries (3 ounce or less) in ONE, QUART-SIZE, clear plastic, sealable bag** through security checkpoints" (3-1-1 Rule). (emphasis in original).

30. The Special Needs Rule also addresses liquids "needed by persons with disabilities and medical conditions." The Special Needs Rule states in relevant part:

> We are continuing to permit prescription liquid medications and *other liquids needed by persons with disabilities and medical conditions*. This includes:
>
> • Prescription and over-the-counter medications (liquid, gel, and aerosol), including KY jelly, eye drops, and saline solution for medicinal purposes;
>
> • liquids (to include water, *juice*, or liquid nutrition) or gels for passengers with a disability or medical condition;
>
> [. . .]

FOURTH AMENDED COMPLAINT                                    Case No. 16-cv-01024 JST

> However, if the liquid medications are in volumes larger than 3 ozs each, they may not be placed in the quart-size bag and must be declared to a Transportation Security Officer.  ***A declaration can be made verbally, in writing, or by a person's companion, caregiver, interpreter, or family member***.  Declared liquid medications and other liquids for disabilities and medical conditions must be kept separate from all other property submitted for x-ray screening.
>
> It is recommended (***not required***) that passengers bring along any supporting documentation (ID cards, letter from doctor, etc.) regarding their medication needs.

(emphasis added).

31.     The Special Needs Rule is a substantive rule within the meaning of the APA, including 5 U.S.C. § 551(4), because it effects the substantive rights and interests of the public. *See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 6 (D.C. Cir. 2011) ("[T]he TSA's use of [advanced imaging technology] for primary screening has the hallmark of a substantive rule.").

32.     The Special Needs Rule remains in effect to this day in essentially the same form. The TSA website (www.tsa.gov/travel/special-procedures) currently states under the heading "3-1-1 Liquids Rule Exemption" that "TSA allows larger amounts of medically necessary liquids, gels, and aerosols in reasonable quantities for your trip, but you must declare them to TSA officers at the checkpoint for inspection."

**TSA Prohibits Sai From Travelling with Medically Necessary Liquids.**

33.     On March 1, 2013, Sai approached the TSA security screening area at SFO with carry-on possessions, including medically necessary liquids—namely two transparent, plastic, 50.7-ounce bottles of aloe juice.  The volume of liquids was necessary given Sai's medical conditions, the stress involved with travelling, and the length of the flight to Raleigh, North Carolina (approximately 8 hours).

34.     Sai presented travel documents to a TSA representative and was directed to the x-ray machines for TSA to scan Sai's carry-on items.

35.     Pursuant to TSA's Special Needs Rule, Sai declared the medical liquids to a TSA agent near the x-ray machine.

-7-

36.     The TSA representative acknowledged Sai had declared medical liquids. However, despite TSA's rule that there is no limit on the volume for medical liquids, and the availability of technology to easily screen liquids, the TSA representative refused to screen the aloe juice or let it through the checkpoint because the bottles were "too large." The bottles used by Sai were of a reasonable size.  In addition, the bottle size allowed Sai to safely drink the liquids in the event of a sudden episode, such as muscle spasms.

37.     The TSA representative also asked Sai for documentation proving the bottles contained a medical liquid, despite the Special Needs Rule's explicit statement that "[i]t is . . . not required . . . that passengers bring along any supporting documentation (ID cards, letter from doctor, etc.) regarding their medication needs" and that medical liquids "include water, juice, or liquid nutrition."

38.     Sai asked to speak with a manager in an attempt to resolve the dispute.  Following Sai's request, several TSA representatives became involved in Sai's screening.  The TSA representatives acknowledged that Sai declared medical liquids but questioned the authenticity of Sai's declaration.  The TSA representatives also demanded proof that that the liquids Sai was travelling with were medically necessary.

39.     During the lengthy screening process Sai began experiencing the onset of symptoms typically associated with Sai's disability, including visible hand and arm tremors.  Sai informed the TSA representatives about the immediate need for medical liquids, but they refused to allow Sai to drink the needed juice until some unknown time in the future.

40.     Later, TSA representatives offered to allow Sai to drink water from a small paper cup and then, after the juice was screened, to have Sai's juice poured from the bottle into a small paper cup.  Sai explained that both options were unacceptable due to the onset of Sai's hand tremors and asked to drink from a heavier container to prevent spilling the juice.

41.     The TSA representatives advised Sai that they would not allow Sai to travel with the medical liquids.  The TSA representatives specifically acknowledged that they had read the Special Needs Rule.

-8-

42.     The TSA representatives gave Sai an ultimatum: go back to the non-restricted, pre-checkpoint area in the airport to transfer the liquid from the two 50.7-ounce bottles into 3.2-ounce bottles; place the juice in checked luggage; or abandon the juice.

43.     TSA presented Sai, who did not have the means of purchasing a second non-refundable ticket, with the impossible decision of being stranded in San Francisco or risking a painful cross-country flight — with the possibility of flight delays, cancellations, or other incidents — without access to necessary medical liquids after the onset of symptoms had begun. In addition, the distance between the security checkpoint and the gates is significant and forcing Sai to abandon the liquids forced Sai to travel within the airport without medically necessary liquids or reasonable and immediate access to them from another source.

44.     Sai was forced to depart the checkpoint without the medical liquids because Sai did not have the financial means to give up a non-refundable ticket and then buy a second ticket for the same trip, and the flight was boarding imminently.  Sai suffered injuries based on Sai's medical disabilities after the Government's refusal to follow the Special Needs Rule, including a significant, painful episode of muscle spasms that would have been prevented or ameliorated but for the additional stress caused by the unnecessarily prolonged screening and the unavailability of medical liquids, severe emotional distress, and significant, long-term worsening of Sai's medical condition.

**Sai Files an Administrative Complaint Concerning the Incident.**

45.     On March 14, 2013, Sai submitted to the DHS's Office of Civil Rights and Civil Liberties an administrative complaint concerning the March 1, 2013, incident (Complaint No. 13-0345).  Sai alleged that the TSA acts violated the Special Needs Rule and Rehabilitation Act.

46.     On April 8, 2013, the TSA explicitly admitted fault concerning the March 1, 2013, SFO incident in a public statement to the media, stating:  "TSA's policy allows medically necessary liquids through the security checkpoint once they have been screened.  We regret that TSA did not follows its procedures recently at San Francisco International Airport when a passenger was not permitted to travel with liquids he declared as medically necessary.  The

passenger has reached out to TSA and we will respond directly to his concerns."  (ECF No. 125-10)

47.     On January 15, 2016, DHS denied Sai's complaint, finding that the TSA's actions did not amount to a violation of the Rehabilitation Act or Special Needs Rule.

48.     As to the Rehabilitation Act, the DHS stated "that TSA failed to engage in an appropriate interactive process to identify an appropriate, reasonable accommodation for your disability, and that this failure was prompted by defects in TSA's articulation of its policy that attempts to provide a reasonable accommodation to many individuals requiring liquids for a disability or a medical condition."  However, according to DHS, the TSA's failures did not amount to a violation of the Rehabilitation Act because the "TSA's ability to engage in the required interactive process was inhibited by your own lack of cooperation with an attempt to provide a reasonable accommodation."

49.     As to the Special Needs Rule, the DHS determined that Sai's reading of the Special Needs Rule to permit "medically necessary" liquids in "any amount" "so long as TSA could verify the liquid was not explosive or inherently dangerous" was "not an objectively reasonable understanding of TSA's statements."  DHS, after reviewing Directive Number 065-01 concerning "Nondiscrimination For Individuals With Disabilities In DHS-Conducted Programs And Activities (Non-Employment)," construed "TSA's policy to have been to provide a reasonable accommodation for individuals requiring medical liquids."  The DHS ultimately concluded that the accommodation that Sai sought (i.e., to travel with two 50.7-ounce bottles of medical liquids) was not reasonable.

50.     On January 15, 2016, Sai appealed DHS's denial.  On February 16, 2016, DHS denied Sai's appeal, upholding its determination that Sai was "not discriminated against based on disability in violation of Section 504 in connection with the screening on March 1, 2013."  Sai initiated this action on February 29, 2016.

51.     As a result of the TSA's specific actions, Sai suffered a significant, painful episode of muscle spasms that would have been prevented or ameliorated but for the additional

FOURTH AMENDED COMPLAINT                          Case No. 16-cv-01024 JST

stress caused by the unnecessarily prolonged screening and the unavailability of medical liquids. The incident also caused severe emotional distress and significant, long-term worsening of Sai's medical condition.

52.     As a result of the Government's actions, Sai has suffered and continues to suffer irreparable harm for which there is no adequate remedy at law.  This harm includes not being able to travel by plane with medically necessary liquids.  Sai has put Sai's existing plans to travel to the United States to visit family and friends and to pursue employment on hold due to these fears.  The Government's conduct is also frustrating Sai's ability to maintain employment and Sai's plans to attend law school in the United States.

## CAUSES OF ACTION
### COUNT ONE
Administrative Procedure Act – Violation of Special Needs Rule
5 U.S.C. § 706(2)(A)
(Against the Government)

53.     Sai restates and reincorporates herein by reference each of the allegations set forth above.

54.     The Special Needs Rule constitutes a substantive rule for the purposes of the APA, including 5 U.S.C. § 551(4).

55.     The Special Needs Rule mandates that the TSA allow "persons with disabilities and medical conditions" to travel with liquids, including "juice" or "liquid nutrition" in volumes larger than 3.2 ounces, if declared.  The Special Needs Rule provides that a "declaration can be made verbally, [or] in writing."  Documentation supporting the passenger's medical need "is recommended (not required)."

56.     On March 1, 2013, Sai approached the security screening area at SFO and declared medically necessary liquids.

57.     TSA representatives acknowledged that Sai had declared medical liquids but refused to allow Sai to travel with the liquids.

-11-

58.     The Government's refusal to allow Sai to travel with medical liquids on Sai's person pursuant to the Special Needs Rule constituted a final agency action within the meaning of 5 U.S.C. § 704.

59.     The DHS' denial of Sai's administrative complaint concerning the March 1, 2013, incident also constitutes a final agency action within the meaning of 5 U.S.C. § 704.

60.     Whether pursuant to the Special Needs Rule, Liquids Rule Exemption, or any other nondiscrimination directive, the Government has made the final determination that Sai will not be permitted to travel with medical liquids in volumes Sai has declared necessary for Sai's medical condition.

61.     The Government's refusal to allow Sai to travel with medically necessary liquids in violation of the Special Needs Rule, Liquids Rule Exemption, or any other nondiscrimination directive of the Government was and is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A).

62.     As a result of the Government's conduct, Sai has suffered and will continue to suffer irreparable harm warranting the issuance of injunctive relief and an award of reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 2412.

**SECOND COUNT**
Declaratory Judgment – 28 U.S.C. §§ 2201-2202
(Against the Government)

63.     Sai restates and reincorporates herein by reference each of the allegations set forth above.

64.     There is now an immediate, live, and justiciable dispute between the parties regarding whether the Special Needs Rule, Liquids Rule Exemption, and/or any other relevant nondiscrimination directive, require the Government to allow Sai to travel with medical liquids, including "juice" or "liquid nutrition" in volumes necessary for Sai's medical condition (i.e., 2 to 3 liters or approximately 68 to 101 ounces per day), if declared and screened. The Government's current position is that Sai may not travel with such liquids and/or that any such decision must be made by an individual TSA screener. Sai has a right to travel with the liquids at issue but cannot

reasonably make travel plans with the uncertainty of being able to travel with medically necessary liquids.

65. Sai seeks a declaratory judgment to the effect that Sai has a right to travel with medically necessary liquids in accordance with applicable law.  Sai further requests that the Court specify that the specific volumes of liquids required by Sai are reasonable and that the Government may not deny Sai from traveling with such amounts, subject first to all applicable screening required by the Government.  Until these controversies are resolved, Sai, a United States Citizen, cannot travel to the United States due to fear of future discrimination and severe, adverse health consequences.

**THIRD COUNT**
Rehabilitation Act – 29 U.S.C. § 794
(Against Defendant DHS)

66. Sai restates and reincorporates herein by reference each of the allegations set forth above.

67. Sai is a "qualified individual with a disability" within the meaning of the Rehabilitation Act.  29 U.S.C. §§ 794(a), 705(20); 42 U.S.C. § 12102(1).

68. The Government's domestic security screening program pursuant to which Sai was screened on March 1, 2013, at SFO constitutes a program or activity within the meaning of 29 U.S.C. § 794(b).

69. The Government's domestic security screening program receives federal financial assistance within the meaning of 28 C.F.R. § 41.3(e).

70. The Government excluded Sai from participating in, denied Sai the benefits of, and/or subjected Sai to discrimination under the domestic security screening program solely by reason of Sai's disability.  29 U.S.C. § 794(a).  In discriminating against Sai solely by reason of Sai's disability, the Government refused to follow the procedures set forth in the Special Needs Rule and any other relevant nondiscrimination directive of the Government.

-13-

71.     The Government also failed to engage in the interactive process and provide Sai a reasonable accommodation necessary for Sai's disabilities as specifically provided for in the Special Needs Rule and any other relevant nondiscrimination directive.

72.     The Government's conduct and representations make clear that will not permit Sai to travel with medical liquids in volumes Sai has declared as necessary for Sai's medical condition because the Government does not believe that the volumes are reasonable.

73.     As a result of the Government's conduct, Sai has suffered and will continue to suffer irreparable harm warranting the issuance of injunctive relief and an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 794a against DHS.

**PRAYER FOR RELIEF**

WHEREFORE, Sai asks that the Court enter judgment against the Government and grant the following relief:

1.     Declare the Government's actions violated the Special Needs Rule;

2.     Declare the Government's actions violated the APA because they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

3.     Declare the Government's actions constitute unlawful discrimination against Sai under the Rehabilitation Act;

4.     Issue an order enabling Sai to travel through U.S. airports with medically necessary liquids, subject to required screening.

5.     Award Sai reasonable attorneys' fees, expenses, and recoverable litigation costs reasonably incurred in connection with the commencement and prosecution of this action, including pursuant to 29 U.S.C. § 794a and 28 U.S.C. § 2412;

6.     Any other relief that the Court deems just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38(b), and Civil Local Rule 3-6(a), Sai hereby demands a trial by jury.

1

        Respectfully,

2

3    DATED:  June 25, 2019                    BAKER BOTTS LLP

4

5                                             /s/ Navi Dhillon
                                              NAVI DHILLON
6                                             Attorneys for Plaintiff
                                              SAI
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOURTH AMENDED COMPLAINT                       Case No. 16-cv-01024 JST